IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LETISHA YOUNG,
on behalf of D.Y. PLAINTIFF

V. Case No. 4:25-CV-01032-DPM-BBM

FRANK BISIGNANO, Commissioner,
Social Security Administration DEFENDANT

**RECOMMENDED DISPOSITION**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. Either party may file written objections to this Recommendation. Any objection should be specific and should include the factual and/or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. INTRODUCTION

On September 15, 2022, an application for Title XVI supplemental security income was filed on behalf of D.Y., who was born on January 19, 2022. (Tr. at 112–18). D.Y.'s disability allegedly began at birth. *Id*. at 113. The claim was denied both initially and upon reconsideration, and Letisha Young, D.Y.'s guardian, requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 60, 66, 70. Following a telephone hearing on February 20, 2024, wherein Young appeared *pro se*, *id*. at 30–46, the ALJ concluded that D.Y. was not disabled. *Id*. at 19–24. Young requested review, and on March 24, 2025, the

Appeals Council found that there was no basis for changing the ALJ's decision. *Id*. at 5. The ALJ's decision now stands as the final decision of the Commissioner, and Young seeks judicial review. (Doc. 2). For the reasons set forth below, the Court recommends that the Commissioner's decision be affirmed.

## II. THE COMMISSIONER'S DECISION

At step one of the sequential three-step analysis for determining whether a claimant under the age of 18 is disabled, the ALJ found that D.Y. had not engaged in substantial gainful activity since the application date. (Tr. at 20).[1] At step two, the ALJ identified speech, language, and developmental delays as severe impairments. *Id*. At step three, the ALJ found that D.Y. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of a listed impairment. *Id*. at 20–24. As a result, the ALJ concluded that D.Y. was not disabled. *Id*. at 24.

## III. DISCUSSION

### A. Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more

[1] The first step is to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). The second step is to ascertain whether the impairment or combination of impairments is severe. *Id.* The third step is to inquire whether the claimant has an impairment or impairments that meet, medically equal, or functionally equal a listed impairment. *Id.* A claimant is not considered disabled unless each step is satisfied. *Id.*

scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

**B. Substantial Evidence Supports the ALJ's Decision.**

On appeal, Young does not assert a specific allegation of error; rather, she argues that D.Y. continues to be impaired, which this Court interprets as a claim that the ALJ's disability determination is not supported by substantial evidence. (Doc. 13 at 1).[2] Young

[2] Because Young is proceeding *pro se*, this Court liberally construes her pleadings. *See Cox on behalf of Cox v. Berryhill*, No. 3:18-cv-00165-DPM-PSH, 2018 WL 6251376, *2 (E.D. Ark. Nov. 29, 2018), *report and recommendation adopted by* 2018 WL 6729981 (E.D. Ark. Dec. 21, 2018). To resolve this case, this Court has reviewed Young's Complaint, (Doc. 2), filed on October 2, 2025; her Brief, (Doc. 13), filed on April 15, 2026; and the argument Young made to the Appeals Council, (Tr. at 109). Although Young attached to her brief on appeal new medical evidence dated after the ALJ's decision, (Doc. 8), this Court does not include this new medical evidence in its review. 42 U.S.C. § 405(g); *Jones v. Callahan*, 122

maintains that D.Y. has speech, language, and fine-motor delays; that he attends speech therapy, occupational therapy, and physical therapy; and that he still sees "the GI specialists." *Id.*

"An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). As noted earlier, the Commissioner has promulgated regulations setting forth a three-step sequential evaluation process for evaluating a child's claim of disability, requiring the ALJ to answer each of the following: (1) Is the child engaged in substantial gainful activity? (2) Does the child have an impairment or combination of impairments that is severe? (3) Does the child's impairment or combination of impairments satisfy the duration requirement and meet, medically equal, or functionally equal the criteria of a listed impairment? 20 C.F.R. § 416.924(b)–(d). If the ALJ determines at any step that the answer is no, then the child is not disabled, and the analysis ends. *Id.* § 416.924(a).

In determining at step three whether the child's impairment or combination of impairments results in limitations severe enough to functionally equal a listed impairment, the ALJ must consider the degree of limitation caused by the impairment or impairments

---

F.3d 1148, 1154 (8th Cir. 1997) ("Additional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision is not a material basis for remand, although it may be grounds for a new application for benefits.").

in six broad areas of functioning called domains. 20 C.F.R. § 416.926a(b)(1). The six domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. *Id.* An impairment or combination of impairments that results in "marked" limitation in two domains or an "extreme" limitation in one domain qualifies as functionally equal. *Id.* § 416.926a(d). A "marked" limitation results if the child's impairment or impairments interfere "seriously" with his ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i). An "extreme" limitation exists when the impairment or impairments interfere "very seriously" with those same abilities. *Id.* § 416.926a(e)(3)(i).

**1. Substantial evidence supports the ALJ's finding that D.Y. did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.**

The ALJ first found that D.Y., two years old at the time of the ALJ's decision, had not engaged in substantial gainful activity. (Tr. at 20). Next, the ALJ identified speech, language, and developmental delays as severe impairments. *Id.* At step three, however, the ALJ found that D.Y.'s impairments did not meet, equal, or functionally equal the severity of a listed impairment. *Id.*

Turning first to the ALJ's evaluation of whether D.Y.'s impairments met or medically equaled a listed impairment, the ALJ specifically considered Listing 111.09. *Id.* at 20–21. To establish Listing 111.09, the child claimant must have a documented

neurological disorder[3] and one of the following: (1) documented speech deficit that significantly affects the clarity and content of speech; (2) documented comprehension deficit resulting in ineffective verbal communication; or (3) impairment of hearing. 20 C.F.R. pt. 404, subpt. P, app. 1, § 111.09. The ALJ found that D.Y. did not meet or medically equal the criteria for Listing 111.09 because the record revealed that D.Y. imitated vocalizations; vocalized to imitate his wants; said mama, dada, and up to three other words; pointed to indicate wants; recognized his name; recognized names of family members; and understood the word "no." (Tr. at 20–21). The ALJ pointed out that D.Y. sought interaction with others, enjoyed playing peek-a-boo, was interested in age-appropriate toys, and waved goodbye. *Id.* at 21. The ALJ also noted that child-health medical examinations revealed normal findings. *Id.* Under these facts, this Court is satisfied that substantial evidence supports the ALJ's determination that D.Y. did not meet or medically equal the criteria of a listed impairment.

**2. Substantial evidence supports the ALJ's finding that D.Y. did not have an impairment or combination of impairments that functionally equaled the severity of a listed impairment.**

Next, to resolve whether D.Y.'s impairment or combination of impairments functionally equaled the severity of a listed impairment, the ALJ reviewed D.Y.'s functioning in the six "domains" described above and in 20 C.F.R. § 416.926a(b)(1). (Tr. at 21). The ALJ found less than marked limitation in three domains—interacting and relating to others, moving about and manipulating objects, and health and physical well-

[3] This Court did not find evidence of a documented neurological disorder in the record.

being—and no limitation in the other three domains. *Id.* at 21–24. As a result, the ALJ concluded that D.Y. was not disabled. The Court will consider each domain below.

Interacting and relating to others. The ALJ found that, in January 2023, D.Y. had a normal 12-month checkup, during which he imitated vocalizations; vocalized and pointed to indicate his wants; was able to say mama, dada, and up to three other words; recognized his own name; recognized his family members by name; and understood "no." (Tr. at 22, 268–70). Additionally, D.Y. sought interaction with others, enjoyed peek-a-boo, was interested in age-appropriate toys, waved goodbye, and displayed a pleasant demeanor. *Id.* at 22, 268. Testing revealed receptive language skills in the functional range and moderately delayed expressive language skills. *Id.* at 22. To address this moderate delay, 90 minutes of skilled speech therapy was recommended to increase receptive and expressive language skills. *Id.* at 22, 380–82. Based on these facts, the ALJ found less than marked limitation in this domain. *Id.* at 22. Having thoroughly reviewed the record, this Court finds that the ALJ's finding is supported by the evidence in the record and is within the "available zone of choice." *Ross v. O'Malley*, 92 F.4th 775, 779 (8th Cir. 2024) (affirmance is appropriate where "the record supports two inconsistent conclusions, both of which are in the available zone of choice").

Moving about and manipulating objects. Young reported that D.Y. could not climb furniture, dance, traverse steps independently, or stack small blocks; however, she did admit that D.Y. could run, push and pull small toys, and walk and stand without assistance. (Tr. at 22, 151). Further, medical records indicated that D.Y. demonstrated adequate growth and development at his one-year checkup—he could pull to stand, cruise, walk, and

rake to grasp. *Id*. at 22, 268–70. The ALJ also noted that D.Y.'s records did not indicate any abnormal developmental findings, except for mild delays in fine-motor and gross-motor skills. *Id*. at 23. Moreover, as of October 2022, D.Y. did not qualify for occupational therapy. *Id*. at 23, 244–47.[4] Although some evidence in the record could support a different conclusion, the record also contains evidence supporting the ALJ's finding. Thus, the ALJ's decision that D.Y. had less than marked limitation in this domain is again within the "zone of choice." *Ross*, 92 F.4th at 779.

Health and physical well-being. Young claimed D.Y. had significant problems in this domain, to include problems swallowing, which diminished D.Y.'s overall ability to perform daily activities. (Tr. at 22–23). The ALJ noted that D.Y.'s initial swallow test in September 2022 indicated laryngeal penetration with thin and mildly thick barium consistency. *Id.* at 23, 218–20. However, there was no evidence of aspiration, his condition improved, and he was taken off medication for reflux in February 2023. *Id*. at 23, 285–86.

At his 12-month well-child check-up examination in January 2023, D.Y. was ingesting regular formula; eating cereals, fruits, vegetables, meats, and finger foods; drinking from a cup; urinating and passing stool normally; remaining in his crib overnight; and showing adequate growth and development. *Id*. at 23, 268–70. And, as stated previously, D.Y. imitated vocalizations; vocalized and pointed to indicate his wants; was able to say mama, dada, and up to three other words; recognized his own name; recognized

[4] D.Y. did qualify for occupational therapy a year later. (Tr. at 370). At that time, D.Y. exhibited a mild delay in grasping, a moderate delay in fine-motor skills, and a severe delay in visual-motor integration. *Id*. The recommendation for occupational therapy noted that his scores were "statistically significant," and therefore he qualified for services. *Id*.

his family members by name; understood "no"; sought interaction with others; enjoyed peek-a-boo; was interested in age-appropriate toys; waved goodbye; and displayed a pleasant demeanor *Id*. at 22, 268–70. D.Y.'s medical records did not indicate any abnormal developmental findings other than mild fine-motor and gross-motor delays along with less-than-marked language delays. *Id*. at 23. In sum, the ALJ's finding of less than marked limitation in this domain is supported by the evidence in the record and is within the "zone of choice." *Ross*, 92 F.4th at 779.

Remaining Three Domains. The ALJ found no limitation in D.Y.'s ability to acquire or use information, attend or complete tasks, or care for himself. (Tr. at 23). Although Young indicated that D.Y. had problems in these areas, the ALJ concluded that "the medical evidence showed no evidence that the claimant had problems learning, persisting to tasks, or age-appropriately performing selfcare." *Id*. This finding is supported by the record, which includes: (1) a physical-therapy evaluation on February 26, 2024, wherein D.Y. had a moderate delay in locomotion but also normal muscle tone and normal range of motion in his extremities and trunk, no transfer or transitional-skill concerns, normal gait, and no need for adaptive equipment, *id*. at 357; (2) a developmental evaluation on September 11, 2023, wherein D.Y. exhibited some delays in gross-motor skills, fine-motor skills, language, and social/emotional skills, but he was also able to use stairs with help, build a small tower out of cubes, obtain pegs from a bottle, point and vocalize to indicate his wants, move about the house without an adult, and initiate his own play activities, *id*. at 425–27; and (3) a September 11, 2023 occupational-therapy evaluation wherein testing revealed that D.Y. had a mild delay in grasping, a moderate delay in overall fine-motor

skills, and a severe delay in visual-motor integration. *Id*. at 368–72. The ALJ's conclusion was also consistent with the May 2023 opinion of the state-agency medical consultant—Dr. William Collie (a pediatrician)—who, at the reconsideration stage, found that D.Y. had no limitation in acquiring and using information; attending and completing tasks; and caring for himself. *Id*. at 55–56; *see id*. at 23–24 ("The undersigned finds these opinions persuasive, as they are consistent and supported by the record that showed improved swallowing without medication and good growth and development with no more than mild limitation in fine and gross manipulations."). In short, substantial evidence supports the ALJ's finding of no limitation in these final three domains.

## IV. CONCLUSION

The ALJ conducted a thorough review of the medical and other evidence and reasonably determined that D.Y.'s impairments did not meet, medically equal, or functionally equal the criteria of a listed impairment. (Tr. at 20–24). Although Young maintains that evidence supports a finding of disability, "[s]o long as substantial evidence supports the ALJ's decision, [the Court] will not reverse even if substantial evidence would have supported a contrary decision or even if [the Court] would have decided the case differently." *Pierce v. Kijakazi*, 22 F.4th 769, 771 (8th Cir. 2022). Because substantial evidence supports the ALJ's determination that D.Y. did not meet, medically equal, or functionally equal a listed impairment, the ALJ did not err in concluding that D.Y. was not disabled.

IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's decision be AFFIRMED.

2. Judgment be entered for the Defendant.

DATED this 20th day of November, 2026.

Benecia Moore

UNITED STATES MAGISTRATE JUDGE